UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID JOHNSON,                              )
                                            )
                    Plaintiff,              )    10 C 6960
                                            )
        vs.                                 )    Judge Feinerman
                                            )
TRANS UNION, LLC, EXPERIAN INFORMATION      )
SOLUTIONS, INC., EQUIFAX INFORMATION        )
SERVICES, LLC, and Unknown Defendants,      )
                                            )
                    Defendants.             )

### MEMORANDUM OPINION AND ORDER

David Johnson brings this action under the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681 *et seq*., and Illinois law against three credit reporting agencies—Trans Union,

LLC, Experian Information Solutions, Inc., Equifax Information Services, LLC—for including

allegedly inaccurate information on his consumer reports and for failing to comply with his

requests to correct the alleged inaccuracies. The court denied Defendants' motion for judgment

on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 70. Now before the

court are the parties' cross-motions for summary judgment. Defendants' motions are granted

and Johnson's motions are denied.

### Background

Johnson's status as a pro se litigant does not excuse him from complying with Local Rule

56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that

procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by

those who proceed without counsel"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F.

-1-

App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). In fact, Local Rule 56.2 requires a party moving for summary judgment against a pro se litigant to serve and file a "Notice to Pro Se Litigants Opposing Summary Judgment," which explains in detail the demands of Local Rule 56.1. *See* N.D. Ill. L.R. 56.2. Defendants served Johnson with three separate copies of the Local Rule 56.2 Notice. Docs. 123, 135, 146.

Despite all this, Johnson has failed to comply with Local Rule 56.1. Defendants support their summary judgment motions (Docs. 119, 131, 144) with memoranda (Docs. 120, 138, 148) and Local Rule 56.1(a)(3) statements (Docs. 121, 140, 147). Johnson has responded with numerous filings (Docs. 172, 173, 175, 179, 183-191), including three titled "Objections and Responses" to Defendants' statements of material facts (Docs. 183, 184, 191). The "Objections and Responses" appear to be Johnson's attempt at Local Rule 56.1(b)(3)(B) responses, but they are noncompliant.

Johnson's noncompliance has serious consequences for his opposition to Defendants' summary judgment motions. Local Rule 56.1(b)(3)(B) plainly states that if a party opposing summary judgment disagrees with any facts asserted in the movant's Local Rule 56.1(a)(3) statement, the opposing party must submit "a concise response to the movant's statement that shall contain … *specific references* to the affidavits, parts of the record, and other supporting materials relied upon" (emphasis added). Although Johnson disputes most of the facts asserted in Defendants' Local Rule 56.1(a)(3) statements, he does not specifically reference any evidence

to support his positions. That alone is reason enough to deem admitted the material facts set forth in Defendants' Local Rule 56.1(a)(3) statements. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases).

Johnson also includes legal arguments to support his disputes with Defendants' asserted facts. "It is inappropriate to make legal arguments in a Rule 56.1 statement" or response. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Farmer v. DirectSat USA, LLC*, 2010 WL 3927640, at *2 (N.D. Ill. Oct. 4, 2010). Johnson's legal arguments therefore are disregarded. *See Sys. Dev. Integration, LLC v. Computer Sci. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) ("the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses") (citation omitted). The court notes for good measure that the legal arguments in Johnson's Local Rule 56.1(b)(3)(B) responses, even if considered, would not change the disposition of the summary judgment motions. And the court also disregards any legal arguments set forth in Defendants' Local Rule 56.1 statements and responses.

Johnson also failed to comply with Local Rule 56.1 in connection with his own summary judgment motions. Docs. 157, 163, 167. Local Rule 56.1(a)(3) requires parties moving for summary judgment to submit "*[w]ith* each motion … a statement of material facts as to which the moving party contends there is no genuine issue" (emphasis added). The only Local Rule

56.1(a)(3) statement Johnson submitted *with* his motions was in conjunction with the motion against Trans Union. Doc. 159. Over two months later, Johnson filed three more Local Rule 56.1(a)(3) statements. Docs. 206, 208, 210. All of Johnson's Local Rule 56.1(a)(3) statements include legal arguments, which are disregarded. Moreover, Johnson's memoranda in support of his summary judgment motions do not cite to his Local Rule 56.1(a)(3) statements, or to any evidence at all, which by itself warrants the denial of his motions. *See Cichon v. Exelon Generating Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("[w]e have ... repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1") (alterations in original and internal quotation marks omitted); *Jorden v. United States*, 2011 WL 4808165, at *1 (N.D. Ill. Oct. 11, 2011); *Sledge v. Bellwood Sch. Dist. 88*, 2011 WL 2457920, at *2 (N.D. Ill. June 17, 2011) (denying summary judgment motion due to movant's violation of Local Rule 56.1); *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 2010 WL 2035720, at *5 (N.D. Ill. May 19, 2010) ("Failure to comply with Local Rule 56.1 is grounds for denial of a summary judgment motion."). Even putting aside that fatal flaw, the evidence that Johnson's Local Rule 56.1(a)(3) statements cites to support his asserted facts either (a) does not actually support the fact asserted or (b) is inadmissible. And regardless, the court notes that consideration of those facts would not affect the disposition of the summary judgment motions.

The following facts are set forth as favorably to Johnson as the record and Local Rule 56.1 permit. Johnson is a "consumer" as defined by the FCRA. *See* 15 U.S.C. § 1681a(c). Each defendant is a "consumer reporting agency" ("CRA") as defined by the FCRA. *See id*. § 1681a(f). CRAs collect credit information on consumers and make that information available in "consumer reports" provided to parties engaged in credit transactions. *See id*. § 1681a(d)(1)(A). CRAs receive credit information from various sources, known as

-4-

"furnishers," such as banks, credit unions, automobile dealers, student loan providers, and state child support enforcement agencies. Credit information reported by a furnisher to a CRA is called a "tradeline," which usually includes a consumer's account number, account status, and payment and balance information. Defendants' furnishers are contractually required to provide accurate tradeline information. Defendants have procedures in place to ensure that furnishers provide accurate information.

In September 2009, Johnson mailed letters to Trans Union, Experian, and Equifax disputing an "Illinois Department of Children and Family Services" tradeline in his credit file. Johnson asserted that the item listed on his consumer reports as "overdue support" was erroneous because no judgment had ever been entered against him for overdue child support. Johnson's correspondence included a copy of a Uniform Order for Support entered by the Circuit Court of Cook County in Johnson's divorce case; the order required Johnson to make semimonthly child support payments of $444.00 commencing on May 15, 2004. Doc. 121-6 at 13. Defendants treated Johnson's correspondence as disputing a tradeline from the Illinois Department of Healthcare and Family Services ("HFS"), which is Illinois' state child support enforcement agency, *see* 89 Ill. Admin. Code § 160.10(a).

All three defendants initiated investigations—called "reinvestigations" under the FCRA, *see* 15 U.S.C. § 1681i—of Johnson's claim. The reinvestigations focused on determining the accuracy of the tradeline information provided by HFS. Defendants contacted HFS and requested verification. HFS responded to all three defendants, indicating that the information on Johnson's HFS account tradeline, including a past due amount of $21,207, was reported accurately. HFS also told Trans Union and Experian that the balance due on Johnson's HFS

account had increased from $21,207 to $21,611. Each defendant mailed Johnson the results of their respective reinvestigations, indicating that the HFS account tradeline remained in his file.

In January 2010, Johnson again contacted Defendants to dispute the HFS account tradeline. Johnson asserted that the tradeline was inaccurate and told at least Trans Union and Experian that $15,000 of child support payments had not been accounted for. Defendants again contacted HFS to verify the accuracy of Johnson's HFS account tradeline. HFS confirmed that the information was correct. HFS also reported to Trans Union and Experian that the balance due on Johnson's HFS account had increased from $18,120 to $18,524. Defendants notified Johnson of the results of their reinvestigations, and Experian recommended that Johnson contact HFS directly to resolve the dispute.

In early June 2010, Johnson sent letters to Trans Union and Experian to again dispute the HFS account tradeline. The letters asserted that HFS had not requested "a judicial order for 'Retroactive support' as required by [§ 160.60(e)(3)] of the Illinois Administrative Code." Doc. 121 at ¶ 47; Doc. 140 at ¶ 49; Doc. 121-8 at 11; Doc. 140-2 at 10. Johnson's letters did not contain any new factual information or identify any changed circumstances from his previous correspondence. Trans Union initiated a third reinvestigation, again contacting HFS. HFS verified that Johnson's HFS account tradeline was accurate through May 2010, and decreased the balance due from $15,524 to $15,516. Trans Union mailed Johnson the results of its reinvestigation. Experian mailed Johnson a letter explaining that, pursuant to 15 U.S.C. § 1681i(a)(3)(A), it would not reinvestigate his dispute at that time because it had already investigated the HFS account tradeline and verified its accuracy. Experian again recommended that Johnson contact HFS directly to resolve the dispute.

In late June 2010, Johnson contacted Trans Union and Experian for a fourth and final time to dispute the HFS account tradeline. In his letter to Experian, Johnson stated that the tradeline was inaccurate because "[t]he family court has not made a determination that David Johnson is in 'arrearage' with regard to payments of child support and … []HFS lacks the authority to enter any administrative order against David Johnson." Doc. 140-2 at 20. Both Experian and Trans Union reinvestigated the tradeline, again contacting HFS. In response, HFS verified Johnson's HFS account tradeline through June 2010 and increased his balance due from $15,520 to $15,958. Trans Union and Experian each mailed Johnson the results of their reinvestigations, with Trans Union including a then-current copy of his HFS account tradeline evidencing HFS's verification of the account's accuracy.

On October 4, 2010, Johnson filed this suit in the Circuit Court of Cook County. The original complaint alleged only violations of the FCRA. Defendants timely removed the case to this court. Johnson then filed an amended complaint, which purports to state claims under the FCRA (Counts I-III) and Illinois law (Counts IV-VI). Doc. 32. Both sides have moved for summary judgment.

## Discussion

### I. FCRA Claims

The operative complaint alleges two substantive violations of the FCRA. First, it alleges that Defendants violated § 1681e(b) by failing to follow "reasonable procedures to assure maximum possible accuracy" of his credit information—namely, the "overdue support" entry on his consumer report. Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C.

§ 1681e(b).  Second, the complaint alleges that Defendants violated § 1681i by failing to

properly reinvestigate Johnson's dispute of the "overdue support" entry.  Section 1681i provides

in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a
> consumer's file at a consumer reporting agency is disputed by the consumer
> and the consumer notifies the agency directly, or indirectly through a
> reseller, of such dispute, the agency shall, free of charge, conduct a
> reasonable reinvestigation to determine whether the disputed information is
> inaccurate and record the current status of the disputed information, or
> delete the item from the file in accordance with paragraph (5), before the
> end of the 30-day period beginning on the date on which the agency
> receives the notice of the dispute from the consumer or reseller.

*Id*. § 1681i(a)(1)(A).  The complaint also references 15 U.S.C. §§ 1681n and 1681o, which

address the remedies available for substantive violations of the FCRA.  *See Ruffin-Thompkins v.*

*Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005) ("If [the defendant] negligently

violated any duty imposed by the statute, [the plaintiff] may collect 'actual damages,' costs, and

fees.  *See* 15 U.S.C. §§ 1681n, 1681o.  If there was a willful violation, punitive damages are also

available.  *See* 15 U.S.C. § 1681n.").

To succeed under § 1681e(b) or § 1681i, Johnson must prove that his consumer reports

included inaccurate information.  *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66 (1st Cir.

2008) ("to prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report

sports an *actual* inaccuracy"); *id*. at 67 ("it is difficult to see how a plaintiff could prevail on a

claim for damages under § 1681i without a showing that the disputed information disclosed by

the credit agency was, in fact, inaccurate"); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834

(7th Cir. 2004) (a plaintiff cannot prevail under § 1681i absent "evidence that [the defendant]

disclosed incorrect information"), *abrogated on other grounds*, *Safeco Ins. Co. of Am. v. Burr*,

551 U.S. 47 (2007); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("In order to

state a claim under 15 U.S.C. § 1681e(b), a consumer must sufficiently allege that a credit

reporting agency prepared a report containing inaccurate information.") (internal quotation

marks omitted); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 840 (N.D. Ill. 2005). Even

putting aside his many Local Rule 56.1 violations, Johnson has submitted no competent evidence

indicating that he did not, in fact, owe the child support listed on his credit reports. For that

reason alone, Defendants are entitled to judgment on Johnson's claims. *See Washington v.*

*Equifax Info. Servs., LLC*, 373 F. App'x 633, 633-34 (7th Cir. 2010) (affirming summary

judgment for the defendant where the plaintiff "did not produce any evidence showing that his

Equifax credit report was inaccurate").

Rather than submit evidence that would allow a reasonable jury to find that he did not

owe the child support reflected on his consumer reports, Johnson argues that he is not legally

obligated to pay overdue child support because no court has entered a "judgment" against him

for such support. Doc. 187 at 6; Doc. 188 at 6; Doc. 189 at 6. Johnson's argument rests on the

false premise that a parent cannot be deemed to owe overdue child support unless a *court* issues

an order *holding* that support is overdue. That premise is demonstrably incorrect. Although

courts issue orders establishing child support obligations, HFS has the authority to determine

whether a parent is complying with those obligations and, if not, the amount that is in arrears.

*See* 89 Ill. Admin. Code § 160.10(a) ("Under Title IV-D of the Social Security Act (42 USC 651

et seq.) the Department undertakes to establish, modify, enforce and collect child and spouse

support obligations from responsible relatives as defined in 89 Ill. Adm. Code 103.10."); *In re*

*Marriage of Lappe*, 680 N.E.2d 380, 386-87 (Ill. 1997) (describing the child support functions of

HFS's predecessor agency, and noting that the agency "may provide these services though the

use of either the administrative process or the court system"); *In re Marriage of Heady*, 924

N.E.2d 1187, 1188 (Ill. App. 2010) (explaining that HFS was "providing … child support

enforcement services pursuant to section 10-1 of the Illinois Public Aid Code" and that HFS,

"[b]y statute and in accordance with its own regulations, … may, *inter alia*, report a child

support arrearage to credit bureaus"); 305 ILCS 5/10-1 (HFS "shall give priority to establishing,

enforcing and collecting the current support obligation, and then to past due support owed to the

family unit"); 89 Ill. Admin. Code 160.70(h)(1) (HFS "shall report the following information

concerning responsible relatives in IV-D cases to consumer reporting agencies when the amount

of past-due support is or exceeds that required for intercepting federal income tax refunds … A)

the name, last known address and Social Security Number of the responsible relative; and B) the

terms and amount of past-due support that has accumulated under the order for support").

 Johnson's argument also cannot be reconciled with § 1681s-1, an FCRA provision

expressly addressing the reporting of information regarding overdue child support. Section

1681s-1 states:

> Notwithstanding any other provision of this subchapter, a consumer
> reporting agency *shall* include in any consumer report furnished by the
> agency … , *any information* on the failure of the consumer to pay overdue
> support which–
>
> > (1) is provided–
> >
> > > (A) to the consumer reporting agency by a State or local
> > > child support enforcement agency; or
> > >
> > > (B) to the consumer reporting agency and verified by any
> > > local, State, or Federal Government agency; and
> >
> > (2) antedates the report by 7 years or less.

15 U.S.C. § 1681s-1 (emphasis added). "The term 'State or local child support enforcement

agency' means a State or local agency which administers a State or local program for

establishing and enforcing child support obligations." 15 U.S.C. § 1681a(j)(2). As the Illinois agency responsible for "establish[ing], modify[ing], enforc[ing] and collect[ing] child and spouse support obligations from responsible relatives," 89 Ill. Admin. Code § 160.10(a), HFS is a "child support enforcement agency" within the meaning of § 1681s-1. "Overdue support" is defined as "the amount of a delinquency pursuant to an obligation determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a minor child which is owed to or on behalf of such child." 42 U.S.C. § 666(e) (incorporated by reference in 15 U.S.C. § 1681a(j)(1)). The "overdue support" tradeline about which Johnson complains fits comfortably within this definition. Doc. 121-6 at 13 (state court order requiring Johnson to pay $888 per month in child support); Doc. 121 at ¶ 29 ("HFS is the Furnisher of credit information … concerning [Johnson's] overdue support").

By its plain terms, § 1681s-1 states that a CRA not only can, but *must*, report "any information" provided by HFS regarding "the failure of [Johnson] to pay overdue support." 15 U.S.C. § 1681s-1. This mandate would make no sense if, as Johnson asserts, a CRA could report an overdue support tradeline only if the CRA had a court order holding that the consumer owed the child support in question. The mandate is imposed when a state or local child support enforcement agency furnishes information about a consumer's overdue support; it is not up to the CRA to ask the agency whether it determined by itself that support was due or gleaned the information from a court order. This is not to say that a CRA cannot be held liable under § 1681e(b) for inaccurately reporting child support information furnished by an agency, or under § 1681i for refusing to ask the agency to confirm that the furnished information is accurate. But here, Johnson's HFS account tradelines indisputably contained information furnished by HFS, and Defendants dutifully and repeatedly confirmed with HFS that the furnished information was

accurate. Doc. 121 at ¶¶ 36-37, 42-43, 48-49, 54-55, 59; Doc. 140 at ¶¶ 33, 36, 42, 44, 56, 58,

62; Doc. 147 at ¶¶ 9, 55-56, 60-61. Defendants cannot be held liable under two FCRA

provisions (§ 1681e(b) and § 1681i) for reporting information that a third FCRA provision

(§ 1681s-1) required them to report. *See generally Gottlieb v. Carnival Corp.*, 436 F.3d 335, 338

(2d Cir. 2006) ("Normally, a statute must, if reasonably possible, be construed in such a way that

will give force and effect to each of its provisions rather than render some meaningless.")

(internal quotation marks omitted).

Johnson's real dispute concerns the legal validity of his child support obligations. That

dispute is with HFS, not with Defendants, and FCRA litigation against Defendants is not the

appropriate way to resolve the dispute. The point was made in *Carvalho v. Equifax Info. Servs.,*

*LLC*, 629 F.3d 876 (9th Cir. 2010), where the Ninth Circuit concluded that § 1681i claims for

failure to reinvestigate "are not the proper vehicle for collaterally attacking the legal validity of

consumer debts." *Id*. at 892. The Ninth Circuit explained that

> a consumer disputing the legal validity of a debt that appears on her credit
> report should first attempt to resolve the matter directly with the creditor or
> furnisher, which stands in a far better position to make a thorough
> investigation of a disputed debt than the CRA does on reinvestigation. A
> CRA is not required as part of its reinvestigation duties to provide a legal
> opinion on the merits. Indeed, determining whether the consumer has a
> valid defense is a question for a court to resolve in a suit against the
> [creditor,] not a job imposed upon consumer reporting agencies by the
> FCRA. Nor is a CRA obligated not to report any information about the
> disputed item simply because the consumer asserts a legal defense.

*Ibid*. (alteration in original, citations omitted, and internal quotation marks omitted). Likewise,

in *DeAndrade v. Trans Union LLC*, *supra*, the plaintiff sued Trans Union under § 1681i for

failing to reinvestigate his dispute regarding overdue mortgage payments listed on his consumer

report. The plaintiff had stopped making payments to KeyBank, the mortgage holder and

furnisher of the information, because he uncovered information suggesting (to him) that the mortgage was fraudulent. Noting that the plaintiff's dispute was actually with KeyBank and not with Trans Union, the First Circuit affirmed summary judgment for Trans Union because the plaintiff's true claim—that he did not owe money on the mortgage because it was fraudulent—"could [not] have been resolved by a reasonable reinvestigation conducted by [Trans Union]." 523 F.3d at 68. "Determining whether [the plaintiff] was entitled to stop making [mortgage] payments," the court noted, "is a question for a court to resolve in a suit against KeyBank … not a job imposed upon consumer reporting agencies by the FCRA." *Ibid*. The First Circuit concluded that the plaintiff "crossed the line between alleging a factual deficiency that [the CRA] was obliged to investigate pursuant to the FCRA and launching an impermissible collateral attack against a [furnisher] by bringing an FCRA claim against a consumer reporting agency." *Ibid*. The same can be said of Johnson, Defendants, and HFS.

## II.   State Law Claims

The operative complaint purports to set forth state law claims under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*., and for negligence and negligent interference with prospective economic advantage. Doc. 32 at ¶¶ 49-73. Having disposed of Johnson's federal claims, and because the parties are not completely diverse—Johnson is an Illinois citizen, as is Trans Union, *see* Doc. 228—the court must decide under 28 U.S.C. § 1367(c) whether to remand the state law claims to state court. "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims" pursuant to § 1367(c)(3). *Williams v. Rodriguez,* 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where

substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*. The third exception applies here.

Regarding the negligence and negligent interference with prospective economic advantage claims, the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency … except as to *false information* furnished with *malice or willful intent* to injure such consumer." 15 U.S.C. § 1681h(e) (emphasis added). Under the statute's plain terms, state law negligence claims are preempted unless the plaintiff can prove that the defendant furnished "false information" and acted with "malice or willful intent to injure." *See Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011); *Nwoke v. Countrywide Home Loans, Inc.*, 251 F. App'x 363, 365 (7th Cir. 2007); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002); *Thornton v. Equifax, Inc.*, 619 F.2d 700, 704 (8th Cir. 1980); *Shannon v. Equifax Info. Servs, LLC*, 764 F. Supp. 2d 714, 727 (E.D. Pa. 2011); *Gohman v. Equifax Info. Servs., LLC*, 395 F. Supp. 2d 822, 829 (D. Minn. 2005). Johnson satisfies neither requirement. As explained above, Johnson has not produced any evidence showing that Defendants furnished "false information" on his consumer report. And because Defendants complied with the FCRA, they cannot be found to have acted with "malice or willful intent to injure." *See Moline v. Experian Info. Solutions, Inc.*, 289 F. Supp. 2d 956, 959 (N.D. Ill. 2003) ("Compliance with the FCRA precludes a finding of malicious intent."). It follows that Defendants are entitled to summary judgment on the negligence and negligent interference with prospective economic advantage claims. *See Molton v. Experian Info. Solutions, Inc.*, 2004 WL 161494, at *7 (N.D. Ill. Jan. 21, 2004) ("We have already concluded that at all times

Experian reported [the plaintiff's] credit status accurately, which precludes a finding that 'false information [was] furnished with malice or willful intent to injure [the plaintiff].'").

Defendants contend that the ICFA claims are barred by § 1681t(a), which exempts CRAs from liability under state law "to the extent that [the state law is] inconsistent with any provision of [the FCRA], and then only to the extent of the inconsistency."  15 U.S.C. § 1681t(a). Defendants also contend that the ICFA itself bars Johnson's claim by excluding from its scope "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  815 ILCS 505/10b(1); *see generally Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 828 (N.D. Ill. 2008) (holding that because the defendant's practices complied with the Truth In Lending Act, the plaintiff could not state an ICFA claim).  In his briefs opposing summary judgment, Johnson does not address his ICFA claim, thus abandoning it.  *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) (a party forfeits arguments that are not raised in the party's brief opposing summary judgment); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) ("because Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment … his negligence claim is deemed abandoned").  Summary judgment for Defendants is therefore appropriate on the ICFA claim as well.

Johnson requests leave to amend his complaint to add state law claims for defamation of credit, false light, and invasion of privacy.  Johnson's request, which is made only in his briefs opposing summary judgment, is denied because he did not file a motion for leave to amend under Rule 15.  Any Rule 15 motion would have been denied in any event.  Section 1681h(e) expressly preempts not just state law negligence claims, but also "defamation" and "invasion of privacy" claims.  15 U.S.C. § 1681h(e).  And although § 1681h(e) does not specifically reference

false light claims, such claims are functionally equivalent to invasion of privacy claims, *see Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 418 (Ill. 1989) ("one who gives publicity to a matter concerning another that places the other before the public in a *false light* is subject to liability to the other for *invasion of his privacy*") (emphasis added) (quoting Restatement (Second) of Torts § 652E (1977)) (internal quotation mark omitted), and thus are preempted as well. *See Mortensen v. Bank of Am., N.A.*, 2011 WL 5593810, at *7 (M.D. Ga. Nov. 17, 2011) (finding false light claim preempted under § 1681h(e)); *Okocha v. Trans Union LLC*, 2011 WL 2837594, at *9 (E.D.N.Y. Mar. 31, 2011) (same).

## III. Claims Against "Unknown Defendants"

In addition to naming Equifax, Experian and Trans Union as defendants, the first amended complaint purports to seek relief against "Unknown Defendants." Because Johnson has not identified, served, or otherwise attempted to proceed against those unknown defendants, those claims are dismissed. *See Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005) (affirming the dismissal of claims against John Doe defendants); *Crawford v. Countrywide Home Loans, Inc.*, 2010 WL 597942, at *6 (N.D. Ind. Feb. 12, 2010) ("Dismissal of a John Doe defendant on the court's own motion for plaintiff's failure to timely identify the defendant and obtain service of process within the limits of Fed. R. Civ. P. 4(m) is permissible, even without notice to plaintiff.") (citing *Brengettcy*).

-16-

**Conclusion**

Defendants' summary judgment motions are granted and Johnson's summary judgment motions are denied.  Judgment is granted in favor of Trans Union, Experian, and Equifax, and against Johnson.  Any claims against "Unknown Defendants" are dismissed without prejudice.

March 22, 2012

_____

United States District Judge